**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No.  12-CR-30066-DRH** |
| | ) | |
| **BRETT L. NASH,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM AND ORDER**</u>

**HERNDON, Chief Judge:**

Before the Court is defendant Brett L. Nash's motion in limine regarding marital communications (Doc. 29).  At issue here is whether the Court should apply the marital communications privilege to communications between defendant Brett L. Nash and his wife, Tanya Nash.  For the reasons that follow, the Court finds that the privilege does not apply, and therefore, the Court denies defendant's motion in limine (Doc. 29).

## I.      Background

On February 23, 2012, the United States filed a five count indictment against defendant, alleging in separate counts: 1) attempted interference with commerce by violence; 2) physical violence and threats of physical violence in furtherance of plan to commit robbery and extortion; 3) attempting abduction, seizing, and confining; 4) murder for hire; and 5) murder for hire.

On September 17, 2012, defendant filed a motion in limine regarding martial communications (Doc. 29).  Two days later, on September 19, 2012, the United States filed a superseding indictment charging defendant with the following four counts: 1) attempt to obtain money by extortion; 2) attempted abduction, seizing, and confining; 3) murder for hire; and 4) murder for hire.  On September 27, 2012, the government filed its response (Doc. 35) to the defendant's motion in limine, and on October 5, 2012, defendant filed a reply (Doc. 37) to the government's response.

Subsequently, on October 17, 2012, the government filed a second superseding indictment, charging the following counts: 1) attempt to obtain money by extortion; 2) attempted abduction, seizing, and confining; 3) murder for hire; 4) murder for hire; 5) solicitation of crime of violence; and 6) solicitation of crime of violence.  Thereafter, on October 23, 2012, the United States filed a motion for leave to file a supplemental response to defendant's motion in limine (Doc. 53).  The Court gave defendant time to file any objections to the United States' request but none were filed and on November 7, 2012, the Court gave the United States permission to file a supplement.  The next day, November 8, 2012, the United States filed its supplement, and the Court gave defendant until November 13, 2012, to file a response, if any, thereto.  On November 13, 2012, defendant filed his response.  The parties arguments are set forth below.

In defendant's motion in limine, defendant seeks to preclude the use, whether direct or indirect, of any recordings of communications between defendant and his wife along with the recordation or reflection of any other marital communications between defendant and his wife on the basis of the marital privilege.  Defendant indicates that during the course of discovery, the United States provided defendant recordings of conversations between defendant and his wife that were made unbeknownst to defendant, along with recordings and summaries of interviews and conversations with defendant's wife in which she discusses communications between her and defendant.  Defendant maintains that these communications between defendant and his wife were made in confidence during a valid marriage and therefore those communications and any testimony, documents, or recordings reflecting those communications are privileged and subject to exclusion.

In response, the government contends that the marital communication privilege should not apply because the defendant was attempting to solicit a crime.  Further, the government argues that "[n]o policy justifies protecting the communications of a wife-beating husband who is trying to force his wife into criminal activity through his communication to her."  (Doc. 35, p. 15).  The government also contends that the defendant's communications, in themselves, constitute felonious conduct, and presumably therefore should not be subject to the marital privilege.  Alternatively, the government asserts that even if defendant

prevents his wife from discussing the communications themselves based on the marital communications privilege, the privilege does not prevent her from testifying that she made the recordings.  Lastly, the government contends that the privilege should be deemed waived because defendant related many of the same subjects of his conversations with his wife to the confidential witness.

In the government's supplemental memorandum, the government contends that in light of the second superseding indictment, which added counts V and VI for solicitation of a crime of violence, defendant's communications were in themselves criminal and are not deserving of protection under the marital communications privilege.   In defendant's response, defendant asserts that it appears that the newly added counts, counts V and VI, were only included in the second superseding indictment as a crutch for the government's position on defendant's motion in limine, and that the government seeks to go beyond the commonly recognized exceptions to the marital communications privilege.   For the reasons that follow, the Court disagrees with defendant.

## II.      Standard of Review

"In a criminal trial, the availability of any privilege is 'governed by the principles of the common law as they may be interpreted by the Courts of the United States in the light of reason and experience.'"  *United States v. Lea*, 249 F.3d 632, 641 (7th Cir. 2001) (citing FED. R. EVID. 501).  "Evidentiary privileges must be construed narrowly to protect the search for truth."  *United States v.*

*Lofton*, 957 F.2d 476, 477 (7th Cir. 1992) (citing *United States v. Byrd*, 750 F.2d 585, 592 (7th Cir. 1984)).

### III.    The Marital Privileges

"There are two clearly recognized marital privileges: the marital testimonial privilege and the marital communications privilege."    *United States v. Westmoreland*, 312 F.3d 302, 307 n. 3 (7th Cir. 2002).    "Distinct differences exist between the purposes of the two privileges."    *Id.*    "The testimonial privilege looks forward with reference to the particular marriage at hand: the privilege is meant to protect against the impact of the testimony on the marriage."    *Id.*    "The marital communications privilege in a sense, is broader and more abstract: it exists to ensure that spouses generally, prior to any involvement in a criminal activity or a trial, feel free to communicate their deepest feelings to each other without fear or eventual exposure in a court of law."    *Id.* (citing *Lofton*, 957 F.2d at 477).    Since both privileges are closely related, "to understand the one, it is necessary to understand the relationship between the two privileges."    *Byrd*, 750 F.2d at 589.

The marital communications privilege "applies only to communications made in confidence between the spouses during a valid marriage."  *United States v. Darif*, 446 F.3d 701, 705 (7th Cir. 2006) (quoting *Lea*, 249 F.3d at 641).    "The privilege may be asserted by either spouse."  *Darif*, 446 F.3d at 705 (citing *Lea*, 249 F.3d at 641).    "It 'exists to ensure that spouses generally, prior to any

involvement in criminal activity or a trial, feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law.'" *Darif*, 446 F.3d at 705 (quoting *Westmoreland*, 312 F.3d at 307 n. 3).  "'[W]hile divorce removes the bar of incompetency, it does not terminate the privilege for confidential marital communications.'" *Byrd*, 750 F.2d at 591 (quoting *Pereira v. United States*, 347 U.S. 1, 6 (1953).

"Exceptions to the privilege result from the tension between the cost of reducing our ability to punish criminals and the value of increased spousal communication." *United States v. Short*, 4 F.3d 475, 478 (7th Cir. 1993).  "For example, we only protect statements made in absolute confidence; that necessary element is lost when spouses permit third parties to witness their communications." *Id.*; see also *Lea*, 249 F.3d at 642 ("While we remain steadfast in our position that the necessary element of confidentiality is lost when a spouse divulges to a third party the communication which he or she seeks to exclude from evidence . . . .").    "Because testimony about first-hand observations would not affect the decision to confide in one's spouse, the privilege does not extend to descriptions of observations." *Short*, 4 F.3d at 478.  "In addition, we do not value criminal collusion between spouses, so any confidential statements concerning a joint criminal enterprise are not protected by the privilege." *Id.*; see also *Darif*, 446 F.3d at 706 (citing *Westmoreland*, 312 F.3d at 307).  The Seventh Circuit has also recognized a "business affairs" exception, where the spouse's marital

relationship is merely incidental to the business transaction. *Byrd*, 750 F.2d at 593 n. 3 (citing *United States v. Kahn*, 471 F.2d 191, 194 (7th Cir. 1972)).

The marital testimonial privilege, on the other hand, "protects an individual from being forced to testify against his or her spouse." *Darif*, 446 F.3d at 707. "Only the testifying spouse can assert the privilege, and the privilege may be waived." *Id.* "The testimonial privilege, should the witness-spouse assert it, applies to all testimony against a defendant-spouse, including testimony on nonconfidential matters and matters which occurred prior to the marriage." *Byrd*, 750 F.2d at 590. "The testimonial privilege, however, may not be asserted after a marriage is terminated, because there is no longer any reason to protect that particular marriage." *Id.* "Moreover, courts seem to agree that the testimonial privilege may not be asserted where the marriage between the defendant and the testifying spouse is in fact moribund, though legally still valid." *Id.* (citing *United States v. Cameron*, 556 F.2d 752, 756 (5th Cir. 1977)). The Supreme Court has recognized an exception to the marital testimonial privilege for cases in which one spouse commits a crime against the other. *Trammel v. United States*, 445 U.S. 40, 46 n. 7 (1980) (citing *Wyatt v. United States*, 362 U.S. 525, 526 (1960)).

Here, the marital testimonial privilege is not at issue because only the testifying spouse can assert that privilege, and defendant's spouse has not, nor does it appear that she will attempt to do so. Thus, the Court's focus is on the

marital communications privilege and whether it applies in this case.  In reaching this determination, however, the Court has considered case law applying both privileges because the privileges are so closely related.  See *Byrd*, 750 F.2d at 589.

In 1958 and 1960, the Supreme Court issued two decisions, *Hawkins v. United States*, 358 U.S. 74 (1958), and *Wyatt*, that dealt with the marital privilege, specifically in cases involving the transportation of women in interstate commerce for purposes of prostitution in violation of the Mann Act, 18 U.S.C. § 2421.  In *Hawkins*, the defendant was charged with transporting another woman between states for the purpose of prostitution.  At trial, it was conceded that the woman was transported between states for purposes of prostitution, and the only factual issue in the case was whether the defendant's dominant purpose in making the trip was to facilitate her practice of prostitution.  The woman testified that the defendant agreed to take her to Oklahoma where she could earn money working as a prostitute with a woman called "Jane Wilson," who happened to be the defendant's wife.  The defendant denied any intention on his part that the woman engage in prostitution and testified that her transportation was only an accommodation incidental to a business trip he was making.  The government placed "Jane Wilson" on the stand who testified that she was the defendant's wife, that she was a prostitute at the time the defendant took the other woman to Oklahoma, and that she was a prostitute before she married the defendant.

The Court found that it was error to allow this testimony.  The Court noted that "[t]he basic reason the law has refused to pit wife against husband or husband against wife in a trial where life or liberty is at stake was a belief that such a policy was necessary to foster family peace, not only for the benefit of husband, wife and children, but for the benefit of the public as well."  *Hawkins*, 358 U.S. at 77.  The Court stated, "Such a belief has never been unreasonable and is not now."  *Id*.  The Court recognized that while this exclusionary rule can often result in an injustice, Congress or it "can change or modify the rule where circumstances or further experience dictates," and noted that in fact, changes have been made over time from an absolute bar to circumstances where exceptions have now been made and may be dictated in the future "by 'reason and experience.'"  *Id.* at 78-79 (citing 2 Wigmore, Evidence (3d ed. 1940), § 2240).  The Court had previously noted and cited again to an exception recognized in *Stein v. Bowman*, 38 U.S. 209, 221 (1839), setting forth an exception in circumstances where the husband commits an offense against his wife.  *Hawkins*, 358 U.S. at 75, 78.

Less than two years later in *Wyatt* the Supreme Court considered the scope and nature of the privilege against adverse spousal testimony.  362 U.S. at 526.  In *Wyatt*, the defendant was again charged with knowingly transporting a woman in interstate commerce for the purpose of prostitution.  Again the defendant's wife testified against the defendant at trial.  This time, however, the defendant's wife

was the victim of the crime alleged, who had married the defendant since the date of the offense.

The Court began by noting that in *Hawkins* it expressly acknowledged a common law exception in cases involving certain kinds of offenses committed by the party against the spouse. *Id.* (citing *Hawkins*, 358 U.S. at 75). The Court stated that "[e]xploration of the precise breadth of this exception, a matter of some uncertainty, [citation omitted], can await a case where it is necessary," but "[f]or present purposes it is enough to note that every Court of Appeals which has considered the specific question now holds that the exception, and not the rule, applies to a Mann Act prosecution, where the defendant's wife was the victim of the offense." *Wyatt*, 362 U.S. at 526 (citing cases). Accordingly, the Court "unhesitatingly" approved the exception followed in five different Circuits, "for it cannot be seriously argued that one who has committed this 'shameless offense against wifehood,' [citation], should be permitted to prevent his wife from testifying to the crime by invoking an interest founded on the marital relation or the desire of the law to protect it." *Wyatt*, 362 U.S. at 527.[1]

In *Kahn*, 471 F.2d 191, reversed on other grounds, 415 U.S. 143 (1974), the government appealed from an order suppressing conversations between husband and wife that were gathered from wiretaps authorized by a district

---

[1] The Supreme Court did hold that the district court correctly ruled that the witness-wife could be compelled to testify, *Wyatt*, 362 U.S. at 527-29, but the Supreme Court modified this holding in *Trammel* "so that the witness-spouse alone has a privilege to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying." *Trammel*, 445 U.S. at 53.

judge's order permitting interception of their telephone communications. Specifically, the government intercepted a conversation where the husband called his wife from out of state and discussed gambling wins and losses. Subsequently the husband and wife were indicted for using a telephone "facility in interstate commerce" with intent to promote gambling in violation of Illinois law. The trial judge, without hearing testimony, suppressed any conversations "exclusively" between the husband and wife as being within the marital privilege.

On appeal, the government contended that the judge erroneously applied the marital privilege rule because the wife was not testifying against her husband and because the privilege must give way to the public interest in discovering the truth about crime. *Kahn*, 471 F.2d at 194. The Seventh Circuit agreed, stating that "[i]f the intercepted conversations had to do with the commission of a crime and not with the privacy of the [] marriage, the judge's ruling is erroneous." *Id.* The court noted that while society has an interest in protecting the privacy of a marriage because invasion of the privacy endangers the family relationship, "[t]he privilege has been interpreted in some jurisdictions to exclude conversations between spouses about business, since their role as spouses is merely incidental." *Id.* Indeed, the court found "[t]hat rule reinforces the exception to the privilege; 'Where both spouses are substantial participants in patently illegal activity, even the most expansive of the marriage privileges should not prevent testimony.'" *Id.* Accordingly, the court held that because the conversations were with respect to

ongoing violations of Illinois gambling laws, the judge erred in suppressing those conversations.  *Id.* at 195.

In *United States v. Van Drunen*, 501 F.2d 1393 (7th Cir. 1974), the defendant was indicted on the charge of transporting an alien between state lines, knowing that the alien was illegally in the United States.  One month after the defendant was indicted, the alien became the defendant's wife.  At trial, the defendant's wife testified.  On appeal, the defendant argued that the trial judge should have excluded the testimony of defendant's wife because of the privilege against the testimony of a spouse.

The Seventh Circuit looked to *Kahn* where the court "held that the somewhat related privilege for confidential marital communications did not apply where the conversations were about an unlawful enterprise in which both spouses participated."  *Van Drunen*, 501 F.2d at 1396.  The Seventh Circuit noted that *Kahn* was "not necessarily controlling, for the two marital privileges must 'be sharply distinguished,'" but found that the "considerations similar to those in *Kahn* support affirmance here."  *Id.*  The court then stated:

> The underlying reason for both privileges is to preserve the family. The privilege for confidential marital communications is thought to do this by encouraging the spouses to be frank and open with each other and by protecting marital privacy (***Kahn* at 194**); the privilege against spousal testimony serves the same goal by preventing either spouse from committing the "unforgivable act" of testifying against the other in a criminal case (*Hawkins* at 78). In *Kahn* we concluded that the public interest in preserving the family was not great enough to justify protecting conversations in furtherance of crimes joined in by both spouses; *similarly here, we think that goal does not justify*

> *assuring a criminal that he can enlist the aid of his spouse in a*
> *criminal enterprise without fear that by recruiting an accomplice or*
> *coconspirator he is creating another potential witness.*

*Id.* (emphasis added).   The Seventh Circuit concluded that "[t]oday's holding, combined with *Wyatt*, limits the privilege to those cases where it makes most sense, namely where a spouse who is neither a victim nor a participant observes evidence of the other spouses's crime.   In that circumstance, the privilege encourages the preservation of marriage which may conceivably be an important institution contributing to the rehabilitation of the defendant spouse."   *Id.*

   In 1977, the Seventh Circuit in *Ryan v. Comm'r of Internal Revenue*, 568 F.2d 531 (7th Cir. 1977), adhered to its "statement in the *Van Drunen* case that the privilege should be limited to instances in which it makes the most sense, where a spouse is neither a victim nor a participant observes evidence of the other spouse's crime." *Ryan*, 568 F.2d at 544 (citing *Van Drunen*, 501 F.2d at 1397). In *Ryan*, an appeal from tax court, the defendants, husband and wife, claimed that they need not answer interrogatories regarding their income for the years in question due to the marital privilege against spousal testimony.  568 F.2d at 542. The Seventh Circuit disagreed, finding that the policy reasons in support of the marital privilege were outweighed by the "much more weighty policy . . . in favor of fair and full enforcement of federal tax laws."  *Id.* at 543 (citing *United States v. King*, 73 F.R.D. 103, 106 (E.D. N.Y. 1976)).

   In 1993, the Seventh Circuit issued *Short*.  In that case, the defendant and a coconspirator were found guilty of conspiring to remove, obliterate, tamper

with, and alter the vehicle identification numbers (VINs) of stolen vehicles.   At trial, the defendant's ex-wife, who had been given a grant of immunity, testified extensively about the defendants' criminal activity.   On appeal, the defendant contested the validity of her testimony based upon the marital communications privilege.   *Id.* at 478.   The defendant conceded that most of the testimony fell under either the observation exception or the presence of third parties exception, but argued that some of his ex-wife's testimony should have been excluded because the government did not show that she was a joint participant in the commission of a crime.   *Id.*

The Seventh Circuit noted that the defendant's ex-wife was not indicted, nor did the government describe her as an unindicted coconspirator, but recognized that her testimony did support "the government's theory that she aided and abetted the conspiracy."   *Id.*   For example, the court noted that she testified that she prepared documentation necessary for selling the cars to legitimate buyers, she helped conceal the crime by making a suggestion about how to paint over an identifying feature of a stolen car, she helped her husband replace certain car parts, and she testified pursuant to an agreement with the government granting her immunity from prosecution.   *Id.* at 478-79.   The court stated that "[t]hese factors confirm the government's theory that, while she played a minor role, she nonetheless aided and abetted the conspiracy to a sufficient extent that the marital communication privilege did not apply to all of her testimony."   *Id.* at 479.

The court recognized, however, that "[t]he difficulty lies in the timing of her participation." *Id.* Moreover, there was testimony that defendant's ex-wife may have believed that some of her initial participation was legal, and "[s]he only gradually become a joint participant, in the sense that she knowingly aided and abetted the conspiracy." *Id.* The court indicated that "[j]ust as a marital communications privilege continues to protect pre-divorce disclosures by an ex-spouse, so might the privilege protect disclosures made before the spouse becomes a joint participant in the crime." *Id.* In the end, the court found that the "government offered enough evidence that [the defendant's ex-wife] aided and abetted the commission of [the defendant's] crime to admit part of her testimony under the 'joint participant' exception." *Id.* To the extent that any of the statements fell outside of any of three exceptions, the court found that "bulk of her crucial testimony, and other substantial evidence against [the defendant], was properly admitted," and "[t]herefore, admitting the two additional statements she made, if error, was harmless error." *Id.*

In *Westmoreland*, the defendant was involved in a drug distribution business with a partner who wanted his wife dead. The defendant's partner approached the defendant about having his wife murdered, and the defendant recruited a hitman to do the job. The defendant provided the hitman a truck and decided to stage the murder as a robbery gone bad. Accordingly, the defendant's partner drove his wife to an agreed upon location and upon arrival, the hitman

approached the car, demanded the partner's wife's jewelry, then pulled her from the car and shot her, resulting in her death.  At the time of the murder, the defendant was on vacation, but upon return, he helped the hitman dispose of the jewelry.  Thereafter, he was arrested, and from his jail cell he directed his wife to destroy marijuana in their house and to destroy the murder vehicle.  His wife complied.  The defendant was charged with causing the death of a person through use of a firearm during a drug trafficking crime, use of interstate commerce facilities to commit murder for hire, conspiracy to commit murder for hire, tampering with a witness by committing murder, and causing the death of a witness through use of a firearm.  The jury found the defendant guilty on all five counts.  At his trial, the district court admitted the defendant's statement to his wife that he had supplied his partner with the phone number of a hitman.  The defendant attempted to have this testimony stricken and moved for a mistrial, but the district court denied the motions on the ground that the statement was admissible under the "joint participation" exception to the marital privilege.

On appeal, the defendant argued that when the communication is made to the spouse before the spouse joins in the criminal activity, the marital privilege ought to shield the communication, at least when, as in his case, the spouse later becomes a mere accessory-after-the-fact and not a participant in the underlying crime. *Westmoreland*, 312 F.3d at 307.  In looking to decisions of other circuits as well as its decision in *Short*, the court held that "[t]he initial disclosure of a

crime to one's spouse, without more, is covered by the marital communications privilege." *Id.* at 308. "If the spouse later joins the conspiracy, communications from that point certainly should not be protected." *Id.* The court emphasized in reaching its decision, however, that it was not confronting the situation faced by the Fourth Circuit in *United States v. Parker*, 834 F.2d 408 (4th Cir. 1987), where the court "held that the marital communications privilege did not apply to 'statements made in the course of successfully formulating and commencing joint participation in criminal activity.'" *Westmoreland*, 312 F.3d at 308-09 (quoting *Parker*, 834 F.2d at 413). Accordingly, the court held that the admission of the initial communication between the defendant and his wife was error, but nevertheless, found the error to be harmless considering the other evidence produced in the case. *Westmoreland*, 312 F.3d at 309.

In *Parker*, the defendant was charged with various crimes, including kidnapping, possession of a sawed-off shotgun, carrying a firearm in the commission of a felony, and transportation of a firearm interstate to commit a felony. At trial, the government argued that the defendant kidnapped a man for the purpose of murdering him so that the man could not testify against him regarding an alleged robbery the defendant and man had committed together. The evidence presented at trial was that the defendant, with the help of his wife, tricked the man into accompanying them on a trip where the defendant would ultimately kill him. The defendant's wife testified against the defendant as to

statements the defendant made concerning his intentions toward the man and other instructions he gave her in furtherance of his plan to kidnap and murder him.  On appeal, the defendant argued that the wife's statements were confidential communications protected by the marital privilege and should have not been admitted into evidence.  Further, the defendant argued that the "joint criminal participation" exception to the marital privilege did not apply because the defendant's wife was not a participant in the criminal activity, was not a co-defendant in the case, and that his initial statement to his wife that he had to "do Billy in" was not within the exception.

The Fourth Circuit rejected these arguments.  First, the court noted that by her own admission, the defendant's wife was an active and voluntary participant in the kidnapping and alleged murder.  *Parker*, 834 F.2d at 8-9.  Second, the court "found no legal authority for qualifying the term 'participants' to mean participation in a crime in which both spouses are co-defendants, nor is this a logical construction of that term."  *Id.* at 10.  The court stated:

> The policies behind the joint criminal participation exception are concerned with the actual participation by both spouses in a crime, not with their joint prosecution for that crime.  The exception arises out of a careful balancing of the policies behind protecting the intimacy of the private marital communications and the public policy of getting at the truth and attaining justice.  In the context of communications between husband and wife pertaining to their joint criminal activity, the latter interest outweighs the former.  Whether the spouse testifying has been indicted and is being prosecuted for his or her participation in the crime is a prosecutorial prerogative that is not material to the policies at issue here.

*Id.* at 10-11. Lastly, the court disagreed with the defendant's argument that, regardless of the applicability of the joint criminal participation exception to other statements made by him, his initial statement to his wife that he had to "do Billy in" was made prior to her participation in any criminal activity, and therefore was inadmissible. *Id.* at 11. The court stated that "[t]o exclude this statement on that ground would be to place form over substance." *Id.* Quoting *Van Drunen*, 501 F.2d at 1396, the court noted that "[t]he basis for the joint criminal participation exception is that the public interests in protecting marital privacy and encouraging open and honest marital communications do 'not justify assuring a criminal that he can enlist the aid of his spouse in a criminal enterprise without fear that be recruiting an accomplice or co-conspirator he is creating another potential witness.'" *Id.* In a footnote, the court indicated that it thought "all communications between a husband and wife that are in any way related to a crime, and made in the course of the spouses' joint planning or participation in that crime, fall within the exception to the marital privilege." *Id.* at 11-12 n. 7.

The Fourth Circuit also recognized that while *Van Drunen* involved the joint criminal participation exception to the privilege against spousal testimony, it was "equally applicable to the confidential marital communications privilege," and "[i]n fact, the Seventh Circuit had already applied this reasoning to the confidential marital communications privilege in [*Kahn*]." *Id.* at 12-13 n. 8. Further, the court found that the defendant's statement to his wife that he had to

"do Billy in" was more than a mere attempt to inform her about his intentions.  *Id.*
at 13.  Rather, "[i]t was also intended to – and in fact did – bring her into the
conspiracy."  *Id.*  The court found "no basis for making a distinction between
marital communications that involve that initial discussion and commencement of
joint criminal conduct between spouses, and marital communications made
during the joint participation in that criminal conduct."  *Id.* at 13-14.  The court
indicated that "[t]he effect of such a distinction, if any, on the marital relationship
would be *de minimis*."  *Id.* at 14.  "Moreover, the policy considerations that
support the joint criminal participation exception are equally implicated where
from the very outset – as in this case – the spouse is told about the intended
kidnapping and murder and she agrees to assist her husband."  *Id.*  Accordingly,
the court held "that the joint participation exception to the confidential marital
communication privilege extends to statements made in the course of successfully
formulating and commencing joint participation in criminal activity."  *Id.* at 14-15.

## IV.   Analysis

Here, defendant seeks an order precluding "the use, whether direct or
indirect, by the United States of any recordings of communications between
[d]efendant and his wife along with the recordation or reflection of any other
material communications between [d]efendant and his wife, as well as all other
relief the Court deems just and proper."  (Doc. 29).  Specifically, the defendant
seeks to preclude a tape recorded conversation that defendant's wife recorded

without defendant's knowledge and prior to defendant's wife communicating with law enforcement.   Defendant's wife gave the FBI the tape recorded conversation after she was interviewed at her residence prior to the execution of an authorized federal search warrant.   Defendant's wife informed the FBI that she made the recording following an incident where defendant had physically abused her for refusing to be involved with defendant's plan.   She indicated that she made the recording to protect herself if defendant tried to implicate her in his crimes. Based upon the case law set forth above and as explained more specifically below, the Court finds that the government can use this recording at trial and defendant's motion in limine is denied.

First, the Court finds that the long recognized exception for circumstances where the husband commits an offense against the wife applies in this case.  See *Trammel*, 445 U.S. at 46; *Wyatt*, 362 U.S. at 526; *Hawkins*, 358 U.S. at 75, 78; *Stein*, 38 U.S. at 221; *Ryan*, 568 F.2d at 544; *Van Drunen*, 501 F.2d at 1397.


The FBI report and the transcript of the recorded conversation establishes that defendant had physically abused his wife on a number of occasions, and that over the course of several months, defendant attempted to get his wife to assist with defendant's plan on numerous instances.   When defendant's wife would indicate that she would not participate or would threaten to go to the police, defendant would beat his wife.   On one occasion, defendant ripped some hair from

defendant's wife's head and threatened to implicate her by placing her hair at the crime scene if she did not participate in defendant's plan. This, and numerous other offenses, defendant committed against his wife, including, but not limited to, tampering with a witness, victim, or an informant, 18 U.S.C. § 1512, intimidation, 720 ILCS 5/12-6, domestic battery, 720 ILCS 5/12-3.2, and solicitation, 18 U.S.C. § 373, prompts the exception to the marital privilege in circumstances where the husband commits an offense against his wife. While the Supreme Court has yet to explore the precise breadth of this exception, see *Wyatt*, 362 U.S. at 526, the Court finds that the circumstances of this case clearly fall within that exception. For this reason alone the marital communications privilege does not apply.

Second, the Court finds that "joint participants" to a crime exception applies to this case as well. See *Short*, 4 F.3d at 479; *Ryan*, 568 F.2d at 544; *Van Drunen*, 501 F.2d at 1397; *Kahn*, 471 F.2d at 194; *Parker*, 834 F.2d at 8-15. While the government contends that defendant's wife had no criminal intent and that the government has absolutely no intention of charging her with any crime, this does not necessarily mean that defendant's wife did not participate in the crime or that it should be a factor in determining whether the exception applies. See *Parker*, 834 F.2d at 10-11 ("Whether the spouse testifying has been indicted and is being prosecuted for his or her participation in the crime is a prosecutorial prerogative that is not material to the policies at issue here."). Indeed, it is

undisputed that defendant attempted to enlist the aid of his spouse in the criminal enterprise and that defendant's wife said she would participate. Defendant used his wife to get floor plans of the victim's home, procured information from his wife regarding who was staying at the home, and planned on using his wife to help eventually abduct the victim.   Whether defendant's wife actually intended to participate or not does not defeat the fact that defendant actively tried to recruit defendant's wife into the criminal enterprise and his wife was well aware of it, so much so that she tape recorded a conversation between the two in case he tried to implicate her in the crime.   See *Short*, 4 F.3d at 479 (finding that "while she played a minor role, she nonetheless aided and abetted the conspiracy to a sufficient extent that the marital communication privilege did not apply to all of her testimony."); *Van Drunen*, 501 F.2d at 1396 ("[W]e think that goal [of preserving the family] does not justify assuring a criminal that he can enlist the aid of his spouse in a criminal enterprise without fear that by recruiting an accomplice or coconspirator he is creating another potential witness."); cf. *Byrd*, 750 F.2d at 595 (finding, in dicta, that the joint participation exception did not apply where the defendant's wife was not indicted, was not an unindicted co-conspirator, was not involved in the crime, and cooperated with the government). The fact that the recorded conversation has to do with the commission of a crime and not with the privacy of the marriage further supports this result.   See *Kahn*, 471 F.2d at 194.

Furthermore, this is not a situation where a defendant merely confided in his spouse that he was planning to commit a crime, but rather involves coercion, manipulation, and physical abuse over several months.   The recorded conversation is not defendant's initial disclosure confiding in his wife that he was planning on a committing a crime but rather was a conversation recorded by defendant's wife in which defendant and defendant's wife argue about defendant's plan and defendant's wife's participation, or lack of participation, in it.   Indeed, defendant's wife recorded this conversation so that she could show that she was not involved in the crime should defendant try to implicate her in the crime.   Cf. *Westmoreland*, 312 F.3d at 307 (holding that "[t]he initial disclosure of a crime to one spouse's, without more, is covered by the marital communications privilege").   This situation is more akin to the circumstances faced by the Fourth Circuit in *Parker* where the Fourth Circuit refused to make a "distinction between marital communications that involve that initial discussion and commencement of joint criminal conduct between spouses, and marital communications made during the joint participation in the criminal conduct."   *Id.* at 13-14.

Lastly, the Court does not find that applying the privilege in this case would encourage family harmony and the policy reasons in favor of the marital communications privilege.   See *Hawkins*, 358 U.S. at 77; *Ryan*, 568 F.3d at 543 (finding that the policy reasons in support of the marital privilege were outweighed by the "much more weighty policy . . . in favor of fair and full

enforcement of federal tax laws."). The marriage at issue here was clearly moribund. Defendant and defendant's wife indicated that they would separate following the commission of the crime and the marriage had broken down to the point that defendant's wife felt she needed to tape record a conversation between them in case defendant tried to implicate her in the crime. Clearly, the purpose of the marital communication privilege is not to protect discussions between spouses regarding criminal activity where one spouse feels the need to record their conversation after the other spouse physically abuses that spouse.

## V.   Conclusion

In sum, the factual circumstance of this case support allowing defendant's wife's tape recorded statement. As the Seventh Circuit held in *Van Drunen*, the marital communications privilege applies "to those cases where it makes the most sense, namely where a spouse who is neither a victim nor a participant observes evidence of the other spouse's crime." *Van Drunen*, 501 F.2d at 1397. Here, defendant's wife is both a victim and a participant and it does make sense to apply the privilege. Thus, defendant's motion in limine regarding marital communications (Doc. 29) is denied. The United States can use, whether direct or indirect, the recording between defendant and his wife.

**IT IS SO ORDERED.**

**Signed this 15th day of November 2012.**

David R. Herndon
2012.11.15
18:16:25 -06'00'

**Chief Judge**
**United States District Court**

Page **25** of **25**